IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MONDRE POWELL,
*individually, and on behalf of others
similarly situated*,

     Plaintiffs,

v.

TREADMAXX TIRE
DISTRIBUITORS, INC.,

     Defendant.

Civil Action File No.:

1:21-cv-03062

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

Named Plaintiff Mondre Powell, on behalf of himself and others similarly situated (collectively with the Opt-In Plaintiffs, "Plaintiffs"), and Defendant Treadmaxx Tire Distribuitors, Inc. ("Defendant" and, with Plaintiffs, the "Parties") respectfully request that the Court approve the settlement agreement (the "Agreement") that has been reached between the Parties. The Parties submit that the Agreement, which is attached as Exhibit A, is fair and reasonable and should be approved for all the reasons described below.

## I.    Background

### A.    Factual and Procedural Overview

This is a collective action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Named Plaintiff Powell worked for Defendant as a driver at Defendant's tire distribution facility located in Ellenwood, Georgia from 2016 until 2020.

In July 2021, Powell filed this lawsuit alleging that Treadmaxx willfully violated the FLSA by failing to pay him and other current and former drivers for all hours worked, including those in excess of forty hours per workweek at the required overtime premium rate. Plaintiffs allege that these violations were the result of Treadmaxx's company-wide policy of automatically deducting a thirty-minute lunch break from driver's time records each day. Because the Plaintiffs allege that they were frequently unable to take a lunch break each day, Plaintiffs maintain that Treadmaxx's automatic lunch-break deduction policy resulted in unpaid overtime wages.

In its Answer to Plaintiffs' Complaint, Treadmaxx has denied liability and raised several defenses, among them that Plaintiffs had been fully paid for all hours worked, that Plaintiffs' claims are barred by the applicable statute of limitations, that Treadmaxx acted reasonably and had a good-faith belief that its conduct was in compliance with the FLSA, and that Treadmaxx did not

have actual or constructive knowledge that Plaintiffs worked through their lunch breaks, which, if proven, would bar Plaintiffs' recovery entirely.

Treadmaxx consented to the conditional certification of this matter as a collective action and, on January 5, 2022, the Court conditionally certified a class of drivers who worked at Treadmaxx's tire distribution centers in Alabama, Texas, Georgia, Florida, North Carolina, South Carolina, Ohio, and Texas, and adopted the Parties' joint stipulation concerning the issuance of notice to the class.

By the close of the notice period, approximately 47 current and former Treadmaxx drivers joined the collective action. Throughout the notice period, Plaintiffs' counsel expended significant time ensuring that all potential class members had been notified of the case, communicating with potential opt-in Plaintiffs, evaluating the merits of their claims and the extent of their damages, and compiling, tracking, and filing consent forms.

Prior to engaging in expensive and time-consuming class discovery, the Parties agreed that it was in both Parties' interest to attempt to resolve this dispute through negotiations. Accordingly, the Parties moved to modify the scheduling order and stayed discovery to give themselves time to evaluate Plaintiffs' claims, Defendant's defenses, and determine the range of possible damages. To facilitate the ability of Plaintiffs' counsel to assess Plaintiffs'

claims and potential damages, Treadmaxx produced voluminous timekeeping and payroll records for each of the class members.

Plaintiffs' counsel reviewed and analyzed this data themselves and calculated the damages that could be due to the class members under a variety of different possible scenarios. Defendant's counsel also analyzed this data to determine its potential liability if Plaintiffs were successful in prosecuting their claims. Counsel for the Parties then engaged in extensive settlement negotiations, exchanging multiple offers and counteroffers, in an attempt to resolve this dispute without further litigation. On August 3, 2022, the Parties reached the settlement that produced the Agreement now being presented to this Court for approval. The settlement was entered into because both Parties recognized that an outcome in litigation was uncertain, and even a fully successful outcome for either of the Parties would entail substantial additional time, risk, and expense.

**B.    The Parties' Settlement Agreement**

Pursuant to the Parties' Agreement attached as Exhibit A, Treadmaxx agreed to pay a gross settlement amount of $190,191.09 within 10 days of the Court's approval. In consideration for that payment, which will be distributed as described below, Plaintiffs agreed to dismiss this action with prejudice and

to provide Treadmaxx with a limited release of the claims asserted in this litigation.

### 1.    Funds Distributed to the Plaintiffs

Of the gross settlement proceeds, $114,191.09 will be distributed to Plaintiffs as back wages and liquidated damages. This is an excellent result for the Plaintiffs. Plaintiffs generally worked five days per week while employed by Treadmaxx. Plaintiffs' portion of the settlement proceeds compensates the Plaintiffs for three missed lunch breaks per week in *every workweek* during which Plaintiffs were employed over a three-year statutory period. This recovery is significant for several reasons. First, not a single Plaintiff contends that he worked through all five lunch breaks every week while employed by Treadmaxx. Plaintiffs contend that, on average, they worked through two to three lunch breaks per week during the course of their employment. Accordingly, Plaintiffs' portion of the settlement proceeds provides Plaintiffs with nearly *full recovery* for their alleged missed lunch breaks, plus an equal amount in liquidated damages.

Second, it is disputed whether Plaintiffs actually worked through three lunch breaks *every week* during the course of their employment. If the Parties move forward with class discovery, it could very well be the case that Plaintiffs cannot establish that each Plaintiff missed three lunch breaks per week.

Nevertheless, Plaintiffs' portion of the settlement proceeds compensates Plaintiffs for three missed lunch breaks *in every single week* during which the Plaintiffs were employed.

Third, the default statute of limitations for unpaid overtime claims under the FLSA is two years, unless the Plaintiffs can establish that Treadmaxx willfully violated the FLSA, in which case the statute of limitations is three years. Treadmaxx vigorously denies that it violated the FLSA, but even if it did, Treadmaxx contends that its violation was not willful, thus limiting the Plaintiffs to a two-year statute of limitations. Despite this bona fide dispute over the applicable statute of limitations, Plaintiffs' portion of the settlement proceeds compensates Plaintiffs for: (1) three missed lunch breaks per week; (2) in every workweek during which the Plaintiffs were employed; and (3) for a three-year statutory period. Accordingly, Plaintiffs' portion of the settlement proceeds essentially represents the Plaintiffs best day in court and is a significant recovery for the Plaintiffs.

In addition to the proceeds distributed to Plaintiffs as unpaid overtime wages and liquidated damages, $3,200 will be paid to Named Plaintiff Mondre Powell as a service payment for his willingness to serve as the named Plaintiff in this litigation and for his assistance to class counsel in starting the case, identifying potential class members, and for providing information, data, and

documents to Plaintiffs' counsel to support the pursuit of the claims of the class members.

> 2.   *Plaintiffs' Attorneys' Fees and Expenses of Litigation*

The Agreement further provides for Plaintiffs' counsel to be paid $76,000 in attorneys' fees and expenses. Plaintiffs' counsel was retained pursuant to a contingency fee agreement providing that their fees:

> whether negotiated as part of a settlement or awarded by the Court as attorneys' fees either during the case or at the end of the case, will be the greater of (1) 40% of the gross amount of any settlement . . . from or against any adverse or collateral party; or (2) the actual fees incurred by the Firm at the current hourly rates of its attorneys and paralegals.

The fee that Plaintiffs' counsel is to receive under the Settlement Agreement is calculated as 40 percent of the gross settlement proceeds, in strict compliance with counsel's fee agreement with the Plaintiffs.

## II.   The Court Should Approve the Parties' Settlement Agreement

### A.   Legal Standard for Approval of FLSA Settlements

Because the FLSA's provisions are mandatory and generally "not subject to negotiation or bargaining between employers and employees," *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), employees can settle or compromise claims arising under the FLSA only if the settlement is supervised by the Department of Labor or approved by a federal district

court. *Anthony v. Concrete Supply Co.*, No. 3:16-cv-70-TCB, 2017 WL 5639933, *1 (N.D. Ga. Aug. 23, 2017) (citing *Lynn's Food Stores*, 679 F.2d at 1353); *accord Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

The Court's role in supervising an FLSA settlement is to scrutinize the settlement agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute, or alternatively, whether it results from an employer's use of its superior bargaining position to take advantage of its employees. *Lynn's Food Stores*, 679 F.2d at 1354–55; *Rakip v. Paradise Awnings Corp.*, 514 F. App'x 917, 919–20 (11th Cir. 2013). Where a settlement reflects "a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," the court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

In reviewing FLSA settlements, courts in this judicial district "often apply a two-step approach," asking first "whether the compromise is fair and reasonable to the employee," and second "whether the compromise otherwise impermissibly frustrates implementation of the FLSA . . ." *Anthony*, 2017 WL 5639933 at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp.2 d 1227, 1241 (M.D. Fla. 2010)). Factors that courts consider in evaluating whether a settlement is fair and reasonable include the following:

(1)     the existence of fraud or collusion behind the settlement;

(2)     the complexity, risk, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the strength of the plaintiff's case and the probability of plaintiff's success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the counsel.

*George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019). Furthermore, the fact that employees in an FLSA lawsuit are "represented by an attorney who can protect their rights under the statute" makes it "more likely" that the proposed settlement reflects "a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

In addition to reviewing the Plaintiffs' recovery under an FLSA settlement agreement, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. The FLSA provides for a mandatory award of "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Whether fees are to be

computed based on Plaintiffs' counsel's lodestar (i.e., the multiplication of counsel's reasonable hourly rates by the hours reasonably expended on the case) or as a contingency of the overall recovery, "the Court's duty is to assess the reasonableness of such fees under the circumstances." *Aguirre v. S. Fla. Multispecialty Assocs., LLC*, No. 14-CIV-21660-BLOOM/Valle, 2014 WL 12539725, *1 (S.D. Fla. Aug. 19, 2014); *accord Brenowitz v. Implant Seminars, Inc.*, No. 17-20184-CIV-GOODMAN, 2017 WL 3438879, *2 (S.D. Fla. 2017); *Nawaz v. Dade Med. Coll. Inc.*, No. 15-24129-CIV-LENARD/GOODMAN, 2017 WL 11220371, at *2 (S.D. Fla. Aug. 29, 2017), *R&R adopted at* 2017 WL 11220372 (Sept. 29, 2017).

Whether a proposed attorney's fee award is reasonable "will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879 at *2. Factors courts have looked to when making this determination include, without limitation, the following:

1. The amount of risk assumed by plaintiffs' counsel, *Brenowitz*, 2017 WL 3438879 at *3, including risks associated with any affirmative defenses asserted by the defendants, *id.* at *4, or any "genuine coverage and computation issues in dispute," *id.* at *5;

2. The time and effort expended by plaintiffs' counsel in pursuing the claims, and the extent to which their work on this case prevented them from working on other matters, *Nawaz*, 2017 WL 11220371 at *4;

3.  The results obtained by plaintiff's counsel, *Nawaz*, 2017 WL 11220371 at *4;

4.  Whether "a plaintiff is sacrificing a portion of his unpaid wages recovery to fund plaintiff's attorney's fees," *Brenowitz*, 2017 WL 3438879 at *3;

5.  Whether the plaintiff has consented to the amount that he is to receive under the settlement, after the award of attorneys' fees, *Aguirre*, 2014 WL 12539725 at *1;

6.  Whether the record shows that the plaintiff agreed to a contingency fee agreement when retaining counsel, *Brenowitz*, 2017 WL 3438879 at *3;

7.  Whether any contingency fee sought "falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery," *George*, 369 F. Supp.3d at 1382; and

8.  Whether the relationship of any contingency fee to be awarded relative to plaintiffs' counsel's lodestar is reasonable, *Brenowitz*, 2017 WL 3438879 at *4.

Finally, in conducting its analysis of the proposed settlement agreement and the application of the foregoing factors, the Court should keep in mind the "strong policy and presumption" in favor of settlements. *George*, 369 F. Supp. 3d at 1367.

## B.   Analysis of the Settlement Agreement in This Case

In this case, the Parties' Settlement Agreement meets the foregoing requirements for fairness and reasonableness in all respects and furthers the policies and implementation of the FLSA statute.

1. *The Decision to Settle, and the Non-Monetary Terms of the Settlement, Is Fair and Reasonable to Plaintiffs*

The Agreement reflects the compromise of *bona fide* disputes and allows both parties to avoid significant risk associated with proceeding with litigation. Treadmaxx has denied liability and asserted numerous defenses that, if meritorious, could significantly limit, or foreclose entirely, the ability of some or all Plaintiffs to secure meaningful (or any) recoveries under the FLSA. *George*, 369 F. Supp. 3d at 1371 (approving settlement as reasonable where there were "risks attending [the plaintiffs'] claims" and a "certainty of substantial delay and expense from ongoing litigation").

For example, Treadmaxx asserted as one of its affirmative defenses that it neither knew, nor had reason to know, that the Plaintiffs were working through their lunch breaks. Plaintiffs worked for Treadmaxx as drivers who spent the vast majority of their time delivering Treadmaxx products to Treadmaxx customers away from Treadmaxx's warehouse facilities. As remote drivers, Treadmaxx maintains that it had no way of knowing when the Plaintiffs were unable to take a lunch break and continued working. If Treadmaxx were successful in this defense, the Plaintiffs would receive no damages at all. Despite this bona fide dispute regarding Treadmaxx's knowledge of Plaintiffs alleged unpaid overtime wages, the Parties were able

to negotiate a settlement that compensates the Plaintiffs for three missed meal breaks per week. This represents and fair and reasonable compromise of the bona fide dispute regarding Treadmaxx's knowledge of Plaintiffs alleged unpaid overtime wages.

Furthermore, Treadmaxx maintains that even if the Plaintiffs worked through certain lunch breaks, it is unlikely, if not impossible, that the Plaintiffs worked through three lunch breaks during *every workweek* of their employment. If Treadmaxx were able to establish that, for example, Plaintiffs only worked through one or two lunch breaks, and even then, that this happened on a less than weekly basis, Plaintiffs damages would be reduced significantly, and some Plaintiffs could be entitled to no wages at all. Despite this bona fide dispute as to the number of workweeks during which Plaintiffs actually worked through their lunch breaks, the Parties were able to negotiate a settlement that compensates the Plaintiffs for three missed lunch breaks per week in every workweek during which the Plaintiffs were employed. This represents a reasonable compromise over this disputed issue.

Finally, Treadmaxx maintains that even if it did violate the FLSA, its violation was not willful, and thus Plaintiffs are entitled to a two-year, not three-year, statute of limitations. If Treadmaxx were successful on this defense, Plaintiffs' damages would be reduced significantly, and some

Plaintiffs would be entitled to no wages at all because they fall outside the applicable statute of limitations. Despite this bona fide dispute about the applicable statute of limitations, the Parties were able to reach a settlement which provides the Plaintiffs with the full three-year statute of limitations and represents a significant recovery for the Plaintiffs.

In addition, there was no collusion in reaching the Agreement, which was the product of good-faith, arm's-length negotiations between competent counsel who are experienced in litigating FLSA claims. *Id.* at 1369–70 (noting that "prolonged adversarial litigation and negotiations," including "mediation with an experienced mediator" and continued post-mediation negotiations, demonstrate "the absence of fraud or collusion behind the Settlement" and weigh in favor of approval).

The terms of the Settlement Agreement are fair to the class members. After significant correspondence about the scope of Plaintiffs' claims, the settlement, and the release, the Agreement presented for consideration contains only a limited release of claims arising out of or related to Plaintiffs' FLSA claims asserted in this litigation. Plaintiffs are not releasing any other claims they might have against Treadmaxx other than those raised in this lawsuit, nor are they waiving or releasing any prospective rights. *Cf. Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010) (concluding

that a pervasive, general release is unfair in the context of the FLSA and refusing to approve a settlement that required the plaintiffs to release "a dizzying array of claims, known and unknown, against the defendant"); *see also George*, 369 F. Supp. 3d at 1366 (approving settlement containing only a limited release).

Further, there is no confidentiality or non-disclosure provision in the Agreement. *Cf. Anthony*, 2017 WL 56339933 at *1–*2 (noting that "[p]ermitting confidential settlements of FLSA claims thwarts the informational purpose of the statute," and refusing to approve an otherwise reasonable settlement "because of the confidential nature of the agreement"). In sum, in consideration for Treadmaxx's payment of the settlement proceeds, Plaintiffs are not making any non-monetary concessions other than agreeing to the limited release and dismissal of the lawsuit.

2. *The Monetary Payments to Plaintiffs are Fair and Reasonable, Particularly in Light of the Range of Possible Recovery and the Risks of Proceeding to Trial*

The decision to resolve this case via settlement rather than proceeding to trial after years of complex and expensive litigation was reasonable given the risks that Treadmaxx might prevail on one or more of its defenses or that Plaintiffs might not be able to prove all the facts necessary to prevail on the merits of all their claims and secure the highest possible recovery. Despite

these risks, however, the Settlement Agreement generously and fairly compensates Plaintiffs.

Before the settlement was negotiated and reached, Plaintiffs' counsel conducted an exhaustive review of the timekeeping and payroll records produced by Treadmaxx. They then prepared multiple detailed spreadsheets that evaluated, for each of the 47 Plaintiffs, the period for which that person might be able to recover damages as well as the calculation of that person's overtime and liquidated damages under various factual scenarios. Given the substantial risk that many Plaintiffs may not recover any damages at all— because the Plaintiffs fall outside the applicable statute of limitations, did not actually work through three lunch breaks per week, did not work through lunch breaks in *every week* of his employment, or cannot establish that Treadmaxx had knowledge of his missed lunch breaks—the Parties arrived at a settlement that provides the Plaintiffs with nearly full recovery for their alleged unpaid overtime wages. The Parties submit that this reflects a fair and reasonable compromise.

Finally, Named Plaintiff Powell will receive $2,392.37 in unpaid wages and liquidated damages, plus a service payment of $3,200. This service payment is reasonable, and in fact smaller than many service payments that courts have approved in the past. *See George*, 369 F. Supp. 3d at 1374 ("Courts

have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (cited with approval in *George*) (collecting cases in which class representatives were awarded between $5,000 and $100,000, and awarding each of the three named plaintiffs $10,000).

> 3. *The Attorneys' Fees and Costs to Be Awarded to Plaintiffs' Counsel Are Reasonable on the Facts of This Case, as Required by 29 U.S.C. § 216(b)*

Finally, the Settlement Agreement contemplates that Plaintiffs' counsel will be awarded $76,000 in attorney's fees and expenses.

Throughout this litigation, Plaintiffs were represented by Parks, Chesin & Walbert, P.C. (the "Firm"). The Firm was retained pursuant to a contingency fee agreement that provides for fees calculated as the greater of either (1) counsel's time in the case multiplied by their hourly rates or (2) 40% of the gross recovery. Importantly, both the Named and Opt-in Plaintiffs agreed and consented to this fee arrangement by signing consent forms to join this case which explained the fee arrangement to the Plaintiffs. Counsel for the Plaintiffs determined their fee in strict compliance with their agreement with the class as 40% of the total recovery. The contingency called for is "within the range of the private marketplace, where contingency-fee arrangements are

often between 30 and 40 percent of any recovery." *George*, 369 F. Supp. 3d at 1382.

The Firm structured its fee agreement this way precisely because of the significant risk it was incurring in taking on the case. The prospective class included individuals from eight different states, and 47 Plaintiffs ultimately joined the collective action. From the outset, Plaintiffs' counsel knew that if the case did not settle such that formal discovery became necessary, a significant number of depositions would have to be taken, many of which would require counsel to travel, and an expert would likely have to be retained. As a practical matter, the Firm would have to advance these expenses, yet little was known about how many employees would actually join, what their damages were, how concretely those damages could be proven, or what defenses would be asserted by Treadmaxx.

Attorneys John Mays and Dustin Crawford, assisted on occasion by other members of the firm, spent approximately 178 hours corresponding with class members, reviewing their claims, drafting pleadings and correspondence, analyzing documents and data provided by Treadmaxx, computing damages, preparing for and conducting extensive negotiations, and otherwise advocating on behalf of the class members. The Firm is small, with just ten full-time

attorneys,[1] and the time that these attorneys dedicated to this case prevented them from handling other matters. The Firm's efforts on the case produced what the Parties contend is an exceptional outcome, with the 47 class members receiving nearly 100% of their alleged unpaid wages under the best-case scenario, which was not guaranteed to be the outcome at trial. Thus, the class members are not being asked to sacrifice any money due to them in order to fund attorneys' fees. Rather, their compromise as to potential damages reflects the risks associated with proceeding to trial in this collective action. Importantly, the Plaintiffs have been consulted and have agreed to the distribution of alleged unpaid wages, liquidated damages, and attorney's fees and expenses.

Although Plaintiffs' counsel's fee in this case is computed as a contingency of the total settlement, the amount that they are to be paid is reasonably related to their lodestar fee. Plaintiffs' counsel's hourly rates for his

---

[1] *See* https://www.pcwlawfirm.com/our-people.html.

engagement are $400 (J. Mays)[2] and $325 (D. Crawford).[3] Multiplying these rates by counsel's time in the case yields a total lodestar amount of $63,000. Importantly, counsel's loadstar fees do not include the fees and expenses associated with getting the Parties' Agreement approved, nor the significant time and expense associated with administering the settlement and ensuring that each class member is paid. When all is said and done, the fees provided for in the Parties' Agreement will provide Plaintiffs' counsel with essentially their loadstar hourly rate.

As numerous courts in this circuit have previously recognized—in FLSA cases and non-FLSA cases alike—a "contingency fee arrangement often justifies an increase in the award of attorney's fees" so as to compensate plaintiffs' counsel for the risk of non-payment. *George*, 369 F. Supp. 3d at 1380–81; *see also Brenowitz*, 2017 WL 3438879 at *4 (awarding plaintiffs' counsel a 40% contingency in an FLSA case, noting that that amount of fees, "while greater than the lodestar, are designed to address the substantial risk which

---

[2] John Mays has been admitted to the Georgia Bar since 2010 and joined Parks, Chesin & Walbert as a partner in 2019, having previously served as managing partner of the law firm Mays & Kerr. He has spent his entire career specializing in wage and hour litigation under the FLSA and analogous state statutes.

[3] Dustin Crawford has been admitted to the Georgia Bar since 2010 and has worked with Mr. Mays litigating FLSA cases since 2015.

counsel undertook when agreeing to file this atypical lawsuit"). The relationship between Plaintiffs' counsel's current lodestar fees[4] and the contingency fee requested is well within the range of what courts have awarded in other FLSA cases. *See Brenowitz*, 2017 WL 3438879 at *4 (collecting cases in which courts awarded contingency fees that were anywhere from 1.08 to 2.28 times more than the lodestar amount).

Plaintiffs' counsel, who specialize in the litigation of claims under the FLSA and other employment statutes, represent that their fees in this case are reasonable, particularly for a case as complex as this one. Treadmaxx has agreed to pay and does not object to the attorneys' fees described in the Agreement. The requested fee is in line with what other courts in this circuit have awarded. *Brenowitz*, 2017 WL 3438879 at *5 (finding that a 40% contingency fee arrangement was reasonable and fair); *Aguirre*, 2014 WL 12539725 at *1 (same).

"[T]he reasonableness of the contingency arrangement will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879 at *2. Under

---

[4] The fees that Plaintiffs' counsel will be paid from this settlement must also cover time necessarily expended on the case after this joint motion is filed: most significantly, work administering the settlement.

all the circumstances of this case, the requested fee is reasonable and fair and should be approved by this Court.

## III.   Conclusion

For the foregoing reasons, the Parties jointly request that this Court grant the instant motion and approve the Settlement Agreement attached as Exhibit A. A proposed order is attached for the Court's convenience as Exhibit B.

Respectfully submitted, August 31, 2022.

*s/ Dustin L. Crawford*                          *s/ Matthew W. Clarke*
Dustin L. Crawford                               Matthew W. Clarke
Ga. Bar No. 758916                               Ga. Bar No. 127430
John L. Mays
Ga. Bar No. 986574

**PARKS, CHESIN & WALBERT, P.C.**   **Smith Gambrell & Russell**
75 Fourteenth Street, Suite 2600                 1105 W. Peachtree Street NE
Atlanta, Georgia 30309                           Atlanta, Georgia 30309
Phone: (404) 873–8000                            Phone: 404-815-3767
jmays@pcwlawfirm.com
dcrawford@pcwlawfirm.com

*Counsel for Plaintiffs*                         *Counsel for Defendant*